# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

| | |
|---|---|
| BEVERLY LORRAINE TYSON, | |
| Movant, | CIVIL ACTION NO.: 2:16-cv-124 |
| v. | |
| UNITED STATES OF AMERICA, | (Case No. 2:15-cr-8) |
| Respondent. | |

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Beverly Lorraine Tyson ("Tyson"), who is currently incarcerated at the Federal Correctional Camp in Coleman, Florida, filed a Motion to Vacate, Set Aside, or Correct her Sentence pursuant to 28 U.S.C. § 2255. (Doc. 1.) The Government filed a Response. (Doc. 3.) For the reasons which follow, I **RECOMMEND** the Court **DISMISS** Tyson's Motion, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Tyson *in forma pauperis* status on appeal and a Certificate of Appealability.

## **BACKGROUND**

Tyson pled guilty to conspiracy to possess with intent to distribute, and to distribute, a quantity of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846. J., United States v. Tyson, 2:15-cr-8 (S.D. Ga. Jan. 26, 2016), ECF No. 667. The Honorable Lisa Godbey Wood sentenced Tyson to 18 months' imprisonment. Id. Tyson signed a Post-Conviction Consultation Certification on January 29, 2016, after consultation with her attorney, James McIlvaine. Notice, United States v. Tyson, 2:15-cr-8 (S.D. Ga. Jan. 29, 2016), ECF No. 674. Consistent with the

appeal waiver in her plea agreement, Tyson did not file a direct appeal. She timely filed the instant Section 2255 Motion on August 22, 2016.

## DISCUSSION

In her Motion, Tyson contends she is eligible for a minor role deduction. (Doc. 1, p. 4.) The Government responds that: Tyson procedurally defaulted her claim by failing to raise it on direct appeal; the collateral attack waivers contained in her plea agreement bar her claims; and Tyson's claims fail on the merits. (Doc. 3, p. 3.)

**I. Whether the Collateral Waiver Provision in Tyson's Plea Agreement Bars her Claims**

The Government maintains Tyson agreed to a complete waiver of her collateral attack rights as part of her plea agreement. (Id. at p. 4.) The Government asserts Tyson "manifested her understanding of the waiver[ ]" by signing her plea agreement. (Id.)

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and her plea is knowing and voluntary. United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). It is well-settled that a waiver of appeal[1] provision contained in a plea agreement is enforceable if the waiver is knowing and voluntary. United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008) (citing United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001)). "'To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver.'" United States v. Mottola, 394 F. App'x 567, 568 (11th Cir. 2010) (quoting United States v. Benitez-

---

[1] "Appeal" refers to the right to appeal or contest, directly or collaterally, a sentence. United States v. Bushert, 997 F.2d 1343, 1350 & n.17 (11th Cir. 1993). Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings. Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1365–67 (N.D. Ga. 2004).

Zapata, 131 F.3d 1444, 1446 (11th Cir. 1997)). "A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues—indeed, it includes a waiver of the right to appeal blatant error." United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999). "Waiver would be nearly meaningless if it included only those appeals that border on the frivolous." Brown v. United States, 256 F. App'x 258, 261–62 (11th Cir. 2007).

Tyson and her attorney, Mr. McIlvaine, were able to negotiate a plea agreement with the Government whereby Tyson agreed to plead guilty to the sole count for conspiracy to possess with intent to distribute, and to distribute, a quantity of cocaine. A "Waiver of Collateral Attack" provision was included as part of the plea agreement. That provision stated, "Defendant entirely waives her right to collaterally attack her conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion." Plea Agreement, United States v. Tyson, 2:15-cr-8 (S.D. Ga. Aug. 3, 2015), ECF No. 515, pp. 8–9. This waiver was repeated at the beginning of the plea agreement summarizing Defendant's promises. Id. at p. 3.

Tyson appeared before Judge Wood for her change of plea, or Rule 11, proceeding. Judge Wood addressed Tyson and informed her the purpose of the hearing was to ensure that she understood the case that was pending against her, that she understood all of the rights she was waiving or giving up by pleading guilty, and that there was a factual basis for the guilty plea. Change of Plea Hr'g Tr., United States v. Tyson, 2:15-cr-8 (S.D. Ga. Aug. 3, 2015), p. 3. Judge Wood inquired whether anyone had forced or "lean[ed] on" Tyson to offer to plead guilty, and she said no one had done so and that pleading guilty was what she wanted to do. Id. at p. 4. Judge Wood told Tyson that she did not have to plead guilty, and if she chose to persist in her not guilty plea, she would have the right to: a public and speedy trial by jury; a presumption of innocence during that trial; the assistance of trial counsel; see, hear, confront, and cross-examine

3

the Government's witnesses and evidence; call witnesses on her behalf; and testify herself or to remain silent. Id. at pp. 7–8. However, Judge Wood cautioned Tyson she would be waiving these rights if she pled guilty. Id. at p. 8. Tyson stated she understood and did not have any questions. Id.

Tyson also stated she and Mr. McIlvaine reviewed the Indictment together, discussed the facts of her case, and discussed the proposed plea agreement. Id. at p. 9. Tyson stated Mr. McIlvaine had generally spoken to her about the advisory Sentencing Guidelines, that she was satisfied with Mr. McIlvaine's representation, and she had no complaints about him whatsoever. Id. at p. 9. Judge Wood reviewed the sole count in the Indictment with Tyson and the essential elements of the crime for which she was charged and that the Government would have to prove. Id. at pp. 10–11. Judge Wood advised Tyson of the maximum sentence she could impose, which was twenty years' imprisonment, a fine of not more than a million dollars, and at least three years' supervised release. Id. at pp. 11–13.

Additionally, Judge Wood asked the Assistant United States Attorney ("AUSA") to summarize the provisions of the plea agreement. AUSA Marcela Mateo stated:

> [T]he Government will not object to a recommendation from the probation officer that she receive a three-level reduction for the acceptance of responsibility. The plea agreement also contains various provisions, one, regarding, the waiver of her right to appeal, which is found on Page 8, as well as the Defendant entirely waives her right to collaterally attack her conviction and sentence and that is located on Page 9.

Id. at pp. 14–15. Judge Wood asked Tyson if this summary was consistent with the plea agreement she signed, and she stated it was. Id. at p. 15. Tyson also stated she read the plea agreement, and Mr. McIlvaine answered any questions she may have had before she signed the agreement. Judge Wood then addressed Tyson:

> I do want to pick back up on something Ms. Mateo mentioned and that is this agreement that you're presenting does contain a waiver of certain appellate rights. It states "Defendant entirely waives her right to a direct appeal of her conviction and sentence on any ground." However, there are three exceptions to that waiver. That is, if one of these three things were to occur, then you would get a direct appeal right back.
>
> Number 1, if I were to sentence you above that statutory maximum, then you could appeal that directly. Number 2, if I were to sentence you above the advisory guideline range as found by me, then you could appeal that directly, and Number 3, if the Government were to file an appeal, then you, too, could file a direct appeal, but, otherwise, by virtue of this plea agreement, you waive all other direct appellate rights . . . .
>
> There's also contained in this agreement that you're presenting a waiver of collateral attack rights. It states[,] "Defendant entirely waives her right to collaterally attack her conviction and sentence on any ground and by any method including but not limited to a 28 USC Section 22[55] motion." There is one exception to that waiver. That is, you retain the right to collaterally attack based on a claim of ineffective assistance of counsel; understand?

Id. at pp. 15–16. Tyson stated she understood these provisions and did not have questions.

Judge Wood then asked Tyson whether she still wished to plead guilty to the sole count in the Indictment because she was in fact guilty of that count, and Tyson answered in the affirmative. Id. at p. 17. Judge Wood also asked Tyson whether she understood the rights and privileges she was waiving if Judge Wood accepted her plea, and Tyson said she did. Judge Wood determined Tyson participated in the Rule 11 proceedings "knowingly" and "intelligently." Id. Further, Judge Wood determined Tyson's plea was "knowing" and "voluntar[y]". Id. at pp. 17–18. Tyson affirmed these findings. The Government provided a factual basis for Tyson's plea of guilty. Id. at pp. 18–19. After hearing from Tyson again, during which time she agreed with the Government's factual basis, Judge Wood accepted Tyson's plea and adjudged her guilty of the sole count of the Indictment. Id. at p. 20.

At the sentencing hearing, Judge Wood asked Tyson whether she had the opportunity to read and review the Pre-Sentence Investigation report ("PSI") and discuss it with Mr. McIlvaine.

5

Tyson stated she had, and Mr. McIlvaine asserted that there were no objections to the factual accuracy of the PSI or to the probation officer's application of the advisory Guidelines.[2] Sent. Hr'g Tr., United States v. Tyson, 2:15-cr-8 (S.D. Ga. Nov. 16, 2016), ECF No. 812, p. 4. Accordingly, Judge Wood adopted the factual statements in the PSI and the probation officer's application of the Guidelines. Judge Wood determined that Tyson's offense level was 21 with a criminal history category of II, calling for "41 to 51 months imprisonment [.]" Id. at p. 5. After hearing from Mr. McIlvaine, the AUSA, the witnesses testifying on Tyson's behalf, and Tyson herself and reviewing the PSI, the Government's Section 5K1.1 motion for downward departure, Tyson's sentencing memorandum, and the sentencing factors of 18 U.S.C. § 3553, Judge Wood sentenced Tyson to 18 months' imprisonment. Id. at p. 26. Judge Wood remarked that this sentence was a substantial departure from the guideline range based on Tyson's criminal history. Id. However, Judge Wood found this proper because of the substantial and early help Tyson gave to the Government and witness testimony demonstrating her strong familial support. Id. Additionally, Judge Wood reminded Tyson of the waiver provisions contained in her plea agreement. Specifically, Judge Wood stated, "[P]ursuant to the plea agreement, you did waive your appellate rights with certain exceptions and waived the right to attack the sentence in any postconviction proceeding." Id. at p. 27.

The record clearly indicates that Tyson understood the implications of entering a guilty plea, as well as the meaning of the appeal and collateral waiver conditions. In addition, Judge Wood specifically questioned Tyson about these conditions during the Rule 11 hearing and reminded her of these provisions during sentencing. Mottola, 394 F. App'x at 568.

---

[2] Judge Wood noted that Mr. McIlvaine had filed and subsequently withdrawn his objection to the probation officer's application of the advisory Sentencing Guidelines, and therefore, there were no objections remaining. Id. at pp. 4–5.

The appeal waiver bars Tyson's arguments that she is eligible for a minor role deduction. The waiver contained exceptions that allowed Tyson to file a direct appeal of her sentence if the sentence exceeded the statutory maximum, if the sentence was higher than the advisory sentencing guideline range as found by the sentencing court, or if the Government filed an appeal. Plea Agreement, United States v. Tyson, 2:15-cr-8 (S.D. Ga. Aug. 3, 2015), ECF No. 515, p. 8. None of these conditions came to pass. Tyson's sentence of 18 months' imprisonment was significantly below the Guidelines' range, as found by Chief Judge Wood,[3] and within the statutory maximum sentence of twenty years. The collateral attack waiver only provided an exception for filing a Section 2255 Motion for claims based on ineffective assistance of counsel, but Tyson fails to argue that Mr. McIlvaine rendered ineffective assistance.

Tyson and Mr. McIlvaine also executed the Post-Conviction Consultation Certification. Notice, United States v. Tyson, 2:15-cr-8 (S.D. Ga. Jan. 29, 2016), ECF No. 674. In this Certification, Tyson checked the box indicating she decided not to file an appeal, including a Section 2255 motion, and that Mr. McIlvaine explained the consequences of failing to do so. Tyson and Mr. McIlvaine then signed the Certification. Id. As noted above, Tyson "entirely waive[d] her right to collaterally attack her conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion." Plea Agreement, United States v. Tyson, 2:15-cr-8 (S.D. Ga. Aug. 3, 2015), ECF No. 515, p. 9. The only exception is a claim based on ineffective assistance of counsel. However, Tyson's Section 2255 Motion is based on her contention that she should get a minor role deduction simply because she was not the focus of the investigation—not an ineffective assistance of counsel claim. (Doc. 1, p. 4.)

---

[3] An offender with an offense level of 21 and criminal history Category II faces a Guidelines' range of 41 to 51 months' imprisonment. Sent. Table, United States Sentencing Guidelines.

7

Accordingly, the waiver provisions in Tyson's plea agreement bar the claim she attempts to assert through her Section 2255 Motion. Consequently, she is not entitled to her requested relief, and the Court should **DISMISS** Tyson's Motion.

## II. Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Tyson leave to appeal *in forma pauperis*. Though Tyson has, of course, not yet filed a notice of appeal, it would be appropriate to address this issue in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. Further, under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of

appealability when entering an order adverse to the applicant. A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of Tyson's Motion and the Government's Response and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Tyson a Certificate of Appealability, Tyson is advised that she "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS** Tyson's Motion to Vacate, Set Aside, or Correct her Sentence, filed pursuant to 28 U.S.C. § 2255, and **DIRECT** the Clerk of Court to **CLOSE** this case. I also **RECOMMEND** that the Court **DENY** Tyson *in forma pauperis* status on appeal and **DENY** Tyson a Certificate of Appealability.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Tyson and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 19th day of September, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA